**IT IS ORDERED as set forth below:**



**Date: March 20, 2017**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | CASE NUMBER |
| **JORGE WASHINGTON BURBANO**, | **16-68396-PMB** |
| Debtor. | CHAPTER 13 |
| **JORGE WASHINGTON BURBANO**, | |
| Movant, | CONTESTED MATTER |
| v. | |
| **GRANGE MUTUAL INSURANCE CO, A/S/O PETER WHITENING,** | |
| Respondent. | |

### ORDER GRANTING MOTION FOR SANCTIONS PURSUANT TO 11 U.S.C. § 362(k)

On October 28, 2016, the Debtor filed a *Motion to Compel* (Docket No. 10) (the "Motion to Compel") and a *Motion for Sanctions Pursuant to 11 U.S.C. § 362(h)* (Docket No. 11)(the "Motion for Sanctions"). The Debtor requested that the Motion to Compel be heard on an

expedited basis. The Court granted the request for an expedited hearing on November 1, 2016, and scheduled a hearing on the Motion to Compel for November 3, 2016 (the "First Hearing"). The Court scheduled a hearing on the Motion for Sanctions for December 8, 2016 (the "Second Hearing"). On November 2, 2016, Grange Mutual Insurance Co., as subrogee of Peter Whitening ("Grange"), filed a response to the Motion to Compel and the Motion for Sanctions (Docket No. 17) (the "Grange Response").

At the First Hearing and Second Hearing, counsel for the Debtor appeared in support of the Motion to Compel and the Motion for Sanctions, counsel for Grange appeared in opposition to both, and counsel for the Chapter 13 Trustee appeared but did not express a position on either motion. After the Second Hearing, the Debtor filed *Debtor's Supplemental Brief Supporting the Motion for Sanctions for Violation of the Automatic Stay* (Docket No. 26) (the "Debtor's Brief"), and Grange filed *Respondent's Supplemental Brief in Oppsition[sic] to Motion for Sanction [sic] for Violation of the Automatic Stay and Request for Attorneys[sic] Fees* (Docket No. 27) ("Grange's Brief").

## FACTS[1]

Grange was awarded a judgment against the Debtor in the State Court for Clayton County, Georgia, on February 1, 2016, for an automobile accident (the "Judgment"). The Debtor did not pay the Judgment. In March, 2016, Grange notified the State Court for Clayton County of such failure, and pursuant to O.C.G.A. § 40-9-60, the Debtor's driver's license (the "License") was suspended. The Debtor filed this case on October 14, 2016 (the "Petition Date").

---

[1] This Order constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

After filing for bankruptcy, the Debtor went to the Georgia Department of Driver Services (the "DDS"), the state agency responsible for the administration of drivers' licenses, and requested the suspension of his License be lifted. The Debtor asserts that the DDS representative required a release from Grange in order to lift the suspension. The Debtor then requested that Grange provide a release (the "Release") that could be brought to the DDS as requested. Grange provided the Release to the Debtor on October 26, 2016.

Counsel for the Debtor personally brought the Release to the DDS, and was advised by the representative of the DDS that the Release was missing the date of the underlying accident, and without the date of the underlying accident on the Release, the suspension could still not be lifted. Upon informing Grange that the Release needed to be amended (an "Amended Release"), Grange responded that it had no affirmative duty to take any actions, and would not provide the Amended Release. Counsel for Grange confirmed at the First Hearing that Grange had refused to provide the Debtor with the Amended Release, restating that it was under no affirmative obligation to assist the Debtor is getting the License suspension lifted. Counsel for Grange asserted that Grange had provided the original Release merely as a courtesy, and that Grange had no authority to force the DDS to lift the suspension of the License. At the end of the First Hearing, the Court ordered Grange to provide the Debtor with the Amended Release (See Docket No. 21).

At the Second Hearing, counsel for the Debtor informed the Court that Grange had provided the Amended Release and the DDS had lifted the suspension of the License. However, although the suspension had been lifted, the Debtor argued that he had nevertheless incurred damages for the time in which it was suspended, including lost wages for not being able to drive to work, and for the attorneys' fees in preparing and prosecuting the Motion to Compel and the

Motion for Sanctions.  Grange again argued that it was under no affirmative duty to draft a release for the DDS, and cited to two cases in support, Frazier v. Georgia (In re Frazier), Bankr. Case No. 02-41136-LWD, Adversary Case No. 02-4133-LWD, 2003 WL 26098325, 2003 Bankr. LEXIS 1458 (Bankr. S.D.Ga. June 11, 2003) and In re Beckett, 455 B.R. 9 (Bankr. D.Mass 2011).  At the Hearing, Grange admitted Frazier was not actually on point, but reiterated that Beckett provided authority to justify its lack of action and shield Grange from sanctions.  For the reasons outlined below, this Court disagrees.

## DISCUSSION

This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  Venue is proper in this Court under 28 U.S.C. § 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

The automatic stay is imposed upon the filing of a bankruptcy case.  11 U.S.C. § 362(a). 11 U.S.C § 362(a) provides, in pertinent part:

> (a) [A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of-
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor ...;
> >
> > (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> >
> > (4) any act to create, perfect, or enforce any lien against property of the estate;
> >
> > (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [and]

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1)-(6). "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Beyond proving that there was a violation of the stay, willful, as used in 11 U.S.C. § 362(k), has two (2) prongs that must be satisfied: the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay." Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996).

The debtor has to prove a willful stay violation by a preponderance of the evidence. Spinner v. Cash In A Hurry, LLC (In re Spinner), 398 B.R. 84, 94-95 (Bankr. N.D.Ga. 2008) (Diehl, J.). However, the Debtor need only prove that the creditor knew of the stay and intended the action, not that the creditor intended that the action would violate the stay. Jove Eng'g, Inc., 92 F.3d at 1555 (citing Price v. United States, 42 F.3d 1068, 1071 (7th Cir. 1994); Citizens Bank v. Strumpf, 37 F.3d 155, 159 (4th Cir. 1994), rev'd on other grounds, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); Johnston Envtl. Corp. v. Knight (In re Goodman), 991 F.2d 613, 620 (9th Cir. 1993); Budget Service Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292-93 (4th Cir. 1986)); Beckett, 455 B.R. at 14 (citing In re Rosa, 313 B.R. 1, 7 (Bankr. D. Mass. 2004). Once the debtor proves those elements, the burden shifts to the creditor to prove its action, or inaction, did not violate the stay. Jove Eng'g Inc., 92 F.3d at 1556 (citing Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990); Emmert v. Taggart (In re Taggart), 548 B.R. 275, 286 (9th Cir. B.A.P. 2016); Gordon v. Hill (In re Wilson), 454 B.R. 546, 551 (Bankr. N.D.Ga. 2011)(Mullins, C.J.).

In this case, Grange has admitted that, at the time the Debtor requested the Amended Release, Grange was aware that the Debtor had filed for bankruptcy and that the automatic stay was in place. That satisfies the first prong of 11 U.S.C. § 362(k). Grange also admitted that it knowingly refused to provide the Amended Release, and as such, its action was intentional, as required by the second prong of 11 U.S.C. § 362(k). That leaves the question of whether Grange's action actually violated the stay and, if so, a determination of damages. If refusing to provide the Amended Release is an act that violates 11 U.S.C. § 362(a), then Grange willfully and intentionally violated the automatic stay and the Debtor is entitled to damages.

### SUSPENSION OF THE LICENSE WAS AN ACT TO COLLECT A DEBT

Under Georgia law, if a judgment debtor fails to pay a judgment related to a motor vehicle accident, the judgment creditor can request that such debtor's driver's license be suspended until at least $25,000 of such judgment is paid. O.C.G.A. § 40-9-60 – 40-9-62.

O.C.G.A. § 40-9-60(a) provides

> Whenever any person fails within 30 days to satisfy any judgment rendered in an action at law arising out of a motor vehicle accident, to which no appeal has been entered or motion for a new trial entered, then upon the request of the judgment creditor or his attorney it shall be the duty of the court in which such judgment is rendered within this state to forward to the department immediately after the expiration of said 30 days a certified copy of such judgment. The court shall be entitled to a fee as required by paragraphs (4) and (5) of subsection (g) of Code Section 15-6-77. In the event a certificate of pending or unsatisfied judgment is requested, the court shall be entitled to a fee as required by paragraph (8) of subsection (g) of Code Section 15-6-77.

O.C.G.A. § 40-9-61 provides:

> (a) The department, upon receipt of a certified copy of an unsatisfied judgment, shall suspend the driver's license or nonresident's operating privilege of the person against whom such judgment was rendered except as provided in subsections (b) and (c) of this Code section.
>
> (b) If the judgment creditor consents, in writing, in such form as the department may prescribe, the department, in its discretion, may allow the judgment debtor to

> retain his or her license or nonresident's operating privilege for six months from the date of such consent and thereafter until such consent is revoked in writing, notwithstanding default in the payment of such judgment or of any installments as provided in Code Section 40-9-63.

O.C.G.A. § 40-9-62 provides

> (a) A driver's license or nonresident's operating privilege suspended pursuant to Code Section 40-9-61 shall remain so suspended and shall not be renewed, nor shall any such license or registration be thereafter issued in the name of the judgment debtor, whether or not he or she was previously licensed, unless and until every such judgment is stayed, or satisfied in full or to the extent provided in subsection (b) of this Code section, subject to the exceptions provided in this article.
>
> (b) Judgment referred to in this article, which is based upon an accident which occurred on or after January 1, 2001, shall, for the purpose of this chapter only, be deemed satisfied:
>
>> (1) When $25,000.00 has been credited upon any judgment or judgments rendered in excess of that amount because of bodily injury to or death of one person as the result of any one accident;
>>
>> (2) When, subject to such limit of $25,000.00 because of bodily injury to or death of one person, $50,000.00 has been credited upon any judgment or judgments rendered in excess of that amount because of bodily injury to or death of two or more persons as the result of any one accident; or
>>
>> (3) When $25,000.00 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to or destruction of property of others as a result of any one accident.
>
> (c) Reserved.
>
> (d) Payments made in settlement of any claims because of bodily injury, death, or property damage arising from the accident shall be credited in reduction of the amounts provided for in this Code section.

As is evident from the text above, these statutes are not self-executing; a license suspension only occurs "*upon the request of the judgment creditor*." O.C.G.A. § 40-9-60(a) (emphasis added). Further, the judgment creditor appears to have the ability to request that a license be reinstated. O.C.G.A. § 40-9-61(b).

The first question at issue here is whether the foregoing statute is a collection device intending to benefit and be used by judgment creditors. There are cases within and outside of the Eleventh Circuit that address that question. In 1994, a Rhode Island bankruptcy court considered a Rhode Island statute similar to Georgia's that provides for suspension of a judgment debtor's driver's license upon non-payment of a judgment within a certain time. In re Duke, 167 B.R. 324, 325 (Bankr. D.R.I. 1994). Although the creditor argued in Duke that the suspension was an exercise of the state's regulatory or police power, the court found that the purpose of the related statute was to "assist in the recovery of claims by motor vehicle accident judgment creditors." Id. Because the statute was driven by the debtor's lack of payment to the creditor, and not by the health and safety concerns that are the purview of the state, that statute was effectively just a collection mechanism for the creditor. Id. at 325-26 (quoting Muzio v. Sampson (In re Sampson), 17 B.R. 528, 530-31 (Bankr. D.Conn. 1982). Although the opposing party in Duke was the state agency itself, and not the underlying creditor, the case is relevant here because it holds that a state statute similar to Georgia's is really a collection mechanism for the underlying creditor.

Recently, in this District, Judge W. Homer Drake entered a similar order in Stephens v. State Farm Ins. Co., Case No. 16-10775-WHD, Docket No. 16, 2016 Bankr. LEXIS 3061, 2016 WL 4411280 (Bankr. N.D.Ga. July 18, 2016) (Drake, J.). Stephens involved an Arizona statute that is also similar to the Georgia statute at issue here. In a one-page order, Judge Drake cited to Duke and found that the suspension of the debtor's driver's license by operation of the Arizona statute was an attempt to collect on a debt by the creditor and ordered the state agency to reinstate the license. Id.[2] Like Duke, Stephens confirms that statutory schemes like those in

---

[2] Although the opposing party was the judgment creditor, Stephens did not address whether the judgment creditor willfully violated the stay by failing to seek or consent to the reinstatement of the license. Id. at *1.

Rhode Island, Arizona and Georgia that suspend a driver's license until a judgment is paid are collection tools available to certain judgment creditors.

In this case, this Court finds that O.C.G.A. § 40-9-60 *et seq.* is a mechanism for a judgment creditor to use to collect upon its debt. The driver's licenses of judgment debtors are not automatically suspended upon failure to timely pay every judgment related to a motor-vehicle accident. Such suspensions only occur upon notification of the court by the judgment creditor. The judgment creditor has to take an affirmative action to notify the applicable state court that the judgment has not been paid, and only then does the law operate to suspend the license of the judgment debtor. Further, O.C.G.A § 40-9-61(b) specifically provides that, even in the face of the default, if the judgment creditor consents, the license suspension can be lifted. This statutory scheme does not appear to be intended to preserve the health and safety of the residents of the State of Georgia; it seems instead to be intended to assist judgment creditors in collecting their judgments. Therefore, like the statutes in <u>Duke</u> and <u>Stephens</u>, this Court finds that O.C.G.A. § 40-9-60 *et seq.* is really a collection mechanism available to certain motor-vehicle-accident judgment creditors, and therefore the continued employment of this collection mechanism after bankruptcy is prohibited by 11 U.S.C. § 362(a). That still leaves the question, however, of whether Grange's failure to provide the postpetition Amended Release is a violation of the stay.

### GRANGE HAD AN AFFIRMATIVE DUTY TO PROVIDE THE AMENDED RELEASE

Whether failing to provide a release or consent to the lifting of the suspension of a drivers' license is a violation of the automatic stay appears to be a question of first impression in the Eleventh Circuit. However, this Court finds cases related to garnishments and automobile repossessions to be analogous, and an Eleventh Circuit case to be instructive.

*Garnishment*

A garnishment is analogous because, in the absence of affirmative action by the collecting creditor, the garnishment proceeding will continue to the detriment of the debtor – just like a license suspension will continue to plague a debtor until it is lifted. Courts generally hold that garnishments that continue postpetition are acts to collect a debt on behalf of the creditor, regardless of whether the creditor takes any affirmative actions postpetition. See, e.g., Russell v. Caffey (In re Caffey), 384 F. App'x 882, 886-87 (11th Cir. 2010) (citing Lawrence Ath. Club v. Scroggin (In re Scroggin), 364 B.R. 772, 781 (10th Cir. B.A.P. 2007) (ongoing garnishment was a violation of the automatic stay)); Zestee Foods, Inc. v. Phillips Foods Corp., 536 F.2d 334 (10th Cir. 1976); Roche, 361 B.R. at 621.[3]

Failure to dismiss or stay a pending garnishment violates several subsections of 11 U.S.C. § 362(a). One such subsection stays the enforcement and collection on judgments. 11 U.S.C. § 362(a)(2); 3 COLLIERS ON BANKRUPTCY ¶ 362.03[4] (citing Delpit v. Comm'r, 18 F.3d 769 (9th Cir. 1994)); Roche, 361 B.R. at 621; In re See, 301 B.R. 549, 552-53 (Bankr. N.D. Iowa 2003); Briskey, 258 B.R. 473; Lord v. Carragher (In re Lord), 270 B.R. 787, 795 (Bankr. M.D.Ga. 1998). A second prohibits continuations of judicial proceedings. 11 U.S.C. § 362(a)(1); Roche, 361 B.R. at 621. A garnishment falls into both of these categories because it

---

[3] "The automatic stay is considered 'one of the fundamental debtor protections provided by the bankruptcy laws." Id. at 621 (quoting Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54 (1978), 1978 U.S.C.C.A.N. 5787, 5840; H.R.Rep. 595, 95th Cong., 1st Sess. 340 (1977), 1978 U.S.C.C.A.N. 5963, 6296)). The stay's purpose is to provide immediate and broad protection for property of the estate against efforts to collect upon debts. Roche, 361 B.R. at 621; 3 COLLIER ON BANKRUPTCY ¶ 362.03 (Alan N. Resnick & Henry J. Sommer, 16th ed. 2016). Although the stay can be lifted for cause, it is imposed at the beginning of most bankruptcy cases to provide the debtor and the trustee with time to organize the debtor's assets and liabilities. Id. (citing In re Briskey, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001). The automatic stay also protects all the debtor's creditors by preventing individual creditors from levying upon all the debtor's assets to the exclusion of the other creditors and the debtor's fresh start. 3 COLLIERS ON BANKRUPTCY ¶ 362.03; Roche, 361 B.R. at 621 ("The automatic stay, by halting collection activities outside of bankruptcy proceedings, allows for the orderly disposition of estate assets among the creditors.").

is an attempt to collect on a judgment through the institution of a separate judicial proceeding. Roche, 361 B.R. at 621.

Once the debtor notifies a creditor that a bankruptcy case has been filed and the automatic stay has been imposed, the debtor is not required to take any more actions to prevent collection efforts; instead, the burden shifts to the creditor to cease any efforts to collect upon its debts or levy upon property of the estate, and in situations like the repossession of property, that property must be returned to the debtor promptly. 11 U.S.C. § 542; Roche, 361 B.R. at 621; Rutherford v. Auto Cash, Inc. (In re Rutherford), 329 B.R. 886, 892 (Bankr. N.D.Ga. 2005)(Drake, J.).

> The responsibility is placed on the creditor because "to place the onus on the debtor . . . to take affirmative legal steps to recover property seized in violation of the automatic stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the breathing spell from his creditors illusory."

Roche, 361 B.R. at 621 (quoting In re McCall–Pruitt, 281 B.R. 910, 912 (Bankr.E.D.Mich.2002) (quoting Ledford v. Tiedge (In re Sams), 106 B.R. 485, 490 (Bankr.S.D.Ohio.1989))); Elder v. City of Thomasville, GA (In re Elder), 12 B.R. 491, 494 (Bankr. M.D.Ga. 1981) ("No action is unacceptable; no action is action to thwart the effectiveness of the automatic stay."); accord Bank of Am., N.A. v. Johnson (In re Johnson), 479 B.R. 159, 171 n. 56 (Bankr. N.D.Ga. 2012) (holding that prepetition garnished funds may not need to be released, but anything garnished postpetition certainly must). Although judgment creditors have rights to, or interests in, property of the estate, such creditors can only act to collect upon those interests *after* seeking relief from the automatic stay. Roche, 361 B.R. at 621-22 (citing Citizens Bank v. Strumpf, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); Rutherford, 329 B.R. at 892). Until such relief is actively sought, a creditor cannot refrain from action if such inaction causes a violation of the

stay. Roche, 361 B.R at 621-22 ("[T]he creditor cannot sit back on its hands when its failure to act results in a stay violation.").[4] Like the judgment creditor benefitting from a license suspension, the garnishing creditor cannot rely on the status quo to put pressure on the debtor to pay; instead, the creditor must act to relieve the pressure.

*Car Repossession*

A license suspension is also similar in some ways to the repossession of a car prepetition. See Id. at 622 (comparing a garnishment to repossession of a car). Upon a filing of bankruptcy, a creditor that has repossessed a car must either return the car to the debtor or move for relief from the stay for continued possession. Rutherford, 329 B.R. at 892; see also Weber v. SEFCU (In re Weber), 719 F.3d 72, 81 (2d Cir. 2013); Thompson v. Gen. Motors Acceptance Corp., 566 F.3d 699, 703 (7th Cir. 2009); CA Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1151 (9th Cir. 1996); Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989); Unified Peopl's Fed. Credit Union v. Yates (In re Yates), 332 B.R. 1, 4 (B.A.P. 10th Cir. 2005). But see WD Equipment, LLC v. Cowen (In re Cowen), -- F.3d --, 2017 WL 745596, 2017 U.S.App.LEXIS 3486, Case No. 15-1413, at *4-6 (10th Cir. Feb. 27, 2017) (holding that violation of the stay requires an actual act, and passive inaction by a creditor does not violate 11 U.S.C. § 362, though still may be sanctionable under 11 U.S.C. § 105); United States v. Inslaw, 932 F.2d 1467, 1474 (D.C. Cir. 1991). If the creditor wants to retain possession, the burden is on the creditor to move for relief and prove that its interests outweigh the debtor's and the estate's. Rutherford, 329 B.R. at 892-93. Congress has specified the exceptions to the automatic stay, and if not specifically enumerated, the automatic stay applies.

---

[4] To be clear, the garnishing creditor may not in all circumstances be held responsible if the garnishment continues, so long as, at minimum, it has made *a good faith effort* to ensure that the garnishment stops. Buchanan v. First Family Fin. Servs. (In re Buchanan), 273 B.R. 749, 751 (Bankr. M.D.Ga. 2002). It cannot, however, as Grange did here, assert that it has no obligation to take any action, and let the collection action continue.

Id. at 893 ("If Congress had intended to permit secured creditors to withhold property of the estate until the bankruptcy court made a determination of adequate protection and ordered turnover, Congress could have provided a specific exception within section 362 for such actions."). Like the judgment creditor benefitting from a license suspension and a garnishing creditor, the car creditor cannot rely on the status quo to put pressure on the debtor to pay; instead, the creditor must act to relieve the pressure.

*Russell v. Caffey*

The obligations of a garnishing creditor and a repossessing car creditor are similar to the obligation imposed on the holder of a domestic support obligation by the Eleventh Circuit in Caffey, 384 F. App'x at 886-87. In Caffey, a domestic support obligation creditor had filed for and had a hearing on the debtor's contempt in failure to pay its domestic support obligation. Caffey, 384 F. App'x at 884. The state court orally found the debtor in contempt at the hearing, but before the court's ruling could be reduced to writing and a writ of arrest issued, the debtor filed for bankruptcy. Id. Unaware of the bankruptcy filing, the state court entered the order and issued the writ. Id. Although the creditor argued that its involvement ended when it filed the motion for contempt, and the postpetition order and writ, and subsequent arrest, were state action over which it had no control, this was still a violation of the automatic stay. Id. at 886-87. The creditor had initiated the action and therefore had an obligation to make a good faith effort to stop it upon the filing of the bankruptcy case, and certainly could not oppose it. Id. (citing 11 U.S.C. § 362(a)(1); Scroggin, 364 B.R. at 781 (garnishing creditor had affirmative obligation); Johnston v. Parker (In re Johnston), 321 B.R. 262, 282-86 (D. Ariz. 2005) (creditor had affirmative obligation to move to vacate related state court orders)); 2 COLLIER ON BANKRUPTCY ¶ 362.03[4] (Alan N. Resnick & Henry J. Sommer, 3d ed. 2009)). Notice of the bankruptcy and

failure to vacate the contempt and arrest orders constituted violation of the stay. Caffey, 384 F. App'x at 887.[5]

Based on the law in the areas of garnishment and automobile repossession, and the holding in Caffey, this Court believes that it is clear that when a creditor is engaged in a collection activity (like the utilization of a statutory suspension of a Georgia driver's license suspension) at the time a debtor files for bankruptcy, the creditor has a clear obligation in this Circuit to take steps to cause that collection activity to cease.

*Beckett*

As noted above, Grange cites to In re Beckett, 455 B.R. 9 (Bankr. D.Mass 2011) as the "color of authority" that would justify its failure to provide the Amended Release. This Court finds Beckett to be directly contrary to Caffey as well as to precedent in this Circuit in garnishment and automobile repossession cases. Further, to the extent that Beckett could be harmonized with those authorities, this Court finds Beckett to be distinguishable.

Beckett does involve a statute similar to Georgia's that allows a state agency to suspend a judgment debtor's driver's license for failure to pay a judgment arising out of motor-vehicle accident. Beckett, 455 B.R. at 11. Unlike Duke and Stephens, the court in Beckett directly addresses whether a judgment creditor has an affirmative duty to act to relieve such a suspension, finding that it does not. Id. at 13-16. However, Beckett is distinguishable in a number of ways. Those include:

1) The Massachusetts statute at issue in Beckett has no provision that would permit the creditor to require the license to be reinstated. Id. at 16 (*passim*).[6] In fact, the Court

---

[5] Although the creditor in Caffey also opposed the debtor's release from prison and negotiated a payment of $80,000 in exchange for his release, by using the conjunctive "and," the Eleventh Circuit seems to have found both the failure to vacate and the opposition/negotiation to each be a separate basis for affirming the bankruptcy court's holding of a violation of the stay. "She violated the stay by failing to vacate the state court orders *and* by extracting payments from Caffey in exchange for his release. Accordingly, we affirm . . . ." Caffey, 384 F. App'x at 887 (emphasis added).

2) The Massachusetts statute at issue in <u>Beckett</u> has a mechanism that requires the judgment debtor to request the reinstatement of its license. The Georgia statute, as noted above, puts the judgment creditor in charge of that process.

3) In Massachusetts there was an opinion by the state attorney general that stated that the license would only be reinstated upon discharge, which the judgment creditor appears to have relied upon. There is no such opinion in Georgia.

4) The judgment debtor in the <u>Beckett</u> case had little credibility with the Court as a result of facts wildly different from those at bar. <u>Id.</u>, at 12, n. 4. It had been five (5) years since Beckett's license was suspended, Beckett waited three (3) months after the case was filed to begin seeking the reinstatement of his license, the delay caused by Beckett's creditor was only two (2) days, and Beckett sought only emotional distress damages. Here, the Debtor was without a license for an approximately seven months, he sought reinstatement of his license immediately after filing this case,[8] he was without his license as a result of Grange's inaction for at least several weeks,[9] and he seeks concrete actual damages, including lost wages and attorneys' fees.

5) Finally, and maybe most significantly, Beckett insisted that the creditor initiate and prosecute the process to have the license reinstated in its entirety.[10] In this case, all that Grange had to do was sign a new version of the same document it had already

---

[6] The statute only provides that the suspension could be lifted "if the judg[e]ment debtor has satisfied the judg[e]ment, made a deposit with the clerk of the court for the amount of the judg[e]ment, or has not willfully or intentionally failed to comply with the provisions of chapter two hundred and twenty-four." Mass. Gen. Laws. Ch. 90 § 22A (2001).

[7] "If the judgment creditor consents, in writing, *in such form as the department may prescribe*, the department, in its discretion, may allow the judgment debtor to retain his or her license." O.C.G.A. § 40-9-61(b) (emphasis added).

[8] The case was filed October 14. The Motion was filed October 28. In between the parties had discussions, the initial submission of the Release to the DDS was made and refused, a new request for a document was made to Grange's counsel and the new request was refused. This process likely consumed much of the two (2) weeks between the filing of the case and the filing of the Motion.

[9] The First Hearing was held on November 3, by which time the Debtor had been wrongfully without a license for at least a week, possibly longer. By the time of the Second Hearing on December 8, the license had been restored.

[10] <u>Beckett.</u> at 14-15. (quoting <u>In re Wright</u>, Case No. 09-21247-RTL, 2010 Bankr. LEXIS 722, 2010 WL 846920, at *1-5 (D.N.J. Mar. 9, 2010) ("holding an insurance company had no obligation 'to contact Motor Vehicle Services or the state court and initiate proceedings to reinstate the Debtor's license . . . . Nothing in the Bankruptcy Code places the affirmative duty of initiating the debtor's license reinstatement proceedings on the judgment creditor whose judgment underlies the suspension. The burden is on the debtor and the duty to reinstate the debtor's license lies with the state.'")

<p style="text-indent: -2em; padding-left: 2em;">found that cooperation by the creditor would have been fruitless. <u>Id.</u> at 15. Here, the Georgia statute has a provision that permits the judgment creditor to permit the license to be reinstated,[7] and once cooperation was achieved in this case, the license was promptly reinstated.</p>

>signed and include the date of the accident. The simplicity of this act, and Grange's stubborn refusal to perform it, weighs in the evaluation of Grange's good faith in this matter.

Based on the foregoing material differences, this Court does not believe that any reliance that Grange may have placed on Beckett, to the extent it is relevant to this analysis, was reasonable. This leaves only the final question – the determination of damages.

## DAMAGES

Section 362(k) provides that a debtor is entitled to actual damages and attorneys' fees for a willful violation of the automatic stay, and is possibly entitled to punitive damages as well. 11 U.S.C. § 362(k). The burden is on the Debtor to prove the damages it is seeking. Roche, 361 B.R. at 624. Counsel for the Debtor stated at the First and Second Hearing that the Debtor is not seeking punitive damages, so the Court will not consider them.

"Actual damages are real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed to nominal damages and punitive damages." Id. (citing McMillan v. F.D.I.C., 81 F.3d 1041, 1054 (quoting BLACK'S LAW DICTIONARY (6th ed. 1991))) (internal quotation marks omitted). If actual damages are *de minimis*, the court can limit damages to attorneys' fees. Roche, 361 B.R. at 624 (citing Clement v. Burrell (In re Burrell), Case No. 97-38500-T, 1998 Bankr. LEXIS 867, 1998 WL 411287, at *6 (Bankr. E.D.Va. 1998)). As to actual damages and attorneys' fees, the Debtor alleged at the Second Hearing that, due to the failure to reinstate the License, the Debtor has been unable to work for a period of three (3) weeks since the Petition Date, and therefore is entitled to damages in the form of lost earnings. However, the burden on establishing damages lies with the Debtor. Here, in the Motion to Compel, the Debtor did not provide any particular amount of lost income due to the postpetition suspension of the License. At the Hearing, counsel

for the Debtor alleged that there were twenty-one (21) days of missed work for a total of six hundred dollars ($600) of lost wages. However, the Debtor did not testify about any lost wages. Further, the Court is skeptical of the claims of the Debtor as to actual damages, due primarily to the length of the prepetition suspension of the License and the lack of any indication that the Debtor has been completely unable to work since the License was suspended.[11] The Court also considers relevant the fact that some portion of the postpetition suspension period was consumed with Grange's cooperation with the Debtor in providing the Release, a period during which Grange was not violating the stay and thus damages would not accrue. In sum, the Debtor has not adequately proved his loss of income damages, and that relief is denied.

In addition to seeking damages for loss of income, the Debtor also requested attorneys' fees that he incurred in drafting and prosecuting the Motion to Compel and the Motion for Sanctions. Attached to the Motion for Sanctions is an itemized breakdown of the time spent on these matters. The attached Exhibit F shows that counsel for the Debtor bills at a rate of $250 per hour (a rate that is at or below the market rate in this District for counsel with the experience of Debtor's counsel) and that she expended a total of five (5) hours of work in relation to the Motion to Compel and the Motion for Sanctions, and is therefore entitled to one thousand two hundred fifty dollars ($1,250.00). Grange did not dispute the time or work performed, nor did Grange assert that counsel for the Debtor's rate was unreasonable. Therefore, the Court finds that the Debtor is entitled to one thousand two hundred fifty dollars ($1,250) in attorneys' fees. Grange shall pay that sum to counsel for the Debtor within ten (10) days of the entry of this Order.

---

[11] The License had been suspended for around seven (7) months, and the Court expects that the Debtor had established a system of obtaining transportation (albeit less convenient than driving himself) for getting to work.

Accordingly, in light of the foregoing, it is

**ORDERED** that the Motion for Sanctions is **GRANTED**; and it is further

**ORDERED** that the Debtor is awarded **one thousand two hundred fifty dollars ($1,250)** in damages, to be paid in immediately available good funds to counsel for the Debtor within ten (10) days of the entry of this Order.

The Clerk is directed to serve this Order and Notice upon the Debtor, Debtor's Counsel, Respondent, Respondent's Counsel, the Chapter 13 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**